The next case this morning is Berkem v. Shulkin, and that's Case 17-6186. Thank you, Counsel. Good morning, Your Honors. Good morning to you. My apologies? I said good morning to you, Ms. Hurst. Thank you. Good morning, Counsel. May it please the Court, my name is Amber Hurst. I represent Anna Puma Bekkem, a physician at the U.S. Department of Veterans Affairs. There are, in the appellant in this case, there are several issues on appeal, both involving summary judgment and a 12b motion to dismiss. On summary judgment, the issues are whether the district court erred in dismissing a discriminatory pay claim, a retaliatory reprimand, and a retaliatory non-selection. On a 12b motion to dismiss, the single issue is whether the district court erred in dismissing, without leave to amend, a discriminatory reprimand claim. Other than the dispute over the standard of review on the dismissal under 12b, whether the court erred in dismissing the claims is reviewed under the de novo standard. On the disparate pay claim, the assertion is that there was a difference, an actionable difference between the pay of your client, a woman, and some of the men doctors. Yes. The district court made a distinction as to those men and said, well, they're not similarly situated. What is your response to that? What is your best argument on that point? Absolutely. The best argument is with respect to the comparator physician, a male named Dr. Lu. Dr. Lu, the pay records show that Dr. Lu was paid significantly more than Dr. Beckham, was the same certifications and similar in all respects. What the district court did, which we believe to be an error, is on summary judgment, the decision maker, Dr. Malatinsky, submitted an affidavit presented for the first time on summary judgment after the close of discovery that stated Dr. Malatinsky was not similarly situated to the plaintiff because he performed additional job duties. Now, the district court, in its order finding that, cited to the defendant's reply on summary judgment, which then cited to the affidavit, I believe it was paragraph 29 of the affidavit, I could be mistaken, but that affidavit didn't cite to pay records, didn't cite to any documentary evidence. It was merely Malatinsky's statement that, oh, this doctor wasn't similarly situated, and that was error. Not only should the court not consider that. Go ahead. All those facts are in the affidavits before the court at the time of the determination of the summary judgment issue? The facts, which are the representations by Dr. Malatinsky, were mentioned on summary judgment in the affidavit that was created for summary judgment for that purpose after the close of discovery, but those facts, the representation by Malatinsky in his affidavit, he doesn't cite to pay documents. The plaintiff produced pay documents of Dr. Liu, and the pay documents, Dr. Malatinsky testified, I believe I'm stuck, that Dr. Malatinsky testified that all of the physicians were similarly situated. They all performed the same job duties. They were all the same types of physicians. The pay records, Malatinsky also testified that if physicians received pay raises or performed additional job duties, that those would be identified in the pay records. Now, the plaintiff produced the pay records, and with respect to Dr. Liu, there's no indication that he performed more job duties. The only evidence of that, again, is Dr. Malatinsky's affidavit, which is inconsistent with his testimony during his deposition and is inconsistent with the pay records produced on summary judgment. So the material dispute in the evidence, then, is what? What is the evidence other than the mere claim on the part of your client that creates the dispute? The additional pre-duty. Yes. We'll slow down just a little bit. Sure. We all understand ourselves, each other, better when we... Absolutely. I've never been told that before. I'm sure you've never been told to slow down. What is the evidence that you presented that creates that material dispute that a jury or the court needs to resolve? Absolutely. Just as it involves the similarly situated, we presented Dr. Liu's records that show he did not perform additional job duties. Then, Dr. Beckham, we presented Dr. Malatinsky's testimony on deposition that showed all of the physicians were similarly situated. Dr. Malatinsky's testimony on deposition that if physicians receive a pay raise or more pay because of additional job duties, those job duties would be identified in the pay records, and they were not. Again, the plaintiff believes here that there is a strong issue of fact, but even if there were a weak issue of fact, this court has said that's sufficient to get the case to a jury. The pay records you're referring to, this wouldn't be the chart. These are pay records that you say the plaintiff generated. Yes. The actual pay documents from the VA that when a physician receives a certain pay or receives a higher pay, it provides the statutorily required basis for the change in pay. Dr. Ann Davidson's chart, by contrast, is a document, again, created, as she testified during her deposition, a document created for this litigation which she admits omits certain key pieces of evidence and certain key types of pay. I understand, and the pay records you're referring to are in your appendix. Yes. On the pay issue, is your argument, your pretext argument, limited to contending that the evidence permits an inference of discrimination as to market pay? Is that what it's limited to? Yes. Market pay. Yes. Thank you. Now, we do have additional pretext evidence other than what we've just discussed. If you'd like me to go into that, I will. No, that's all right. The argument's yours. I just wanted to focus on one claim at a time, and that claim struck me. Absolutely. If this court has no more questions on the discriminatory pay issue, I would like to move on and focus on the retaliatory non-selection, otherwise known as a retaliatory failure to promote claim. We believe the court erred in dismissing that claim on summary judgment. By the way, on this slow it down, I can't tell you how many times I received that admonition as a young lawyer. Yes. Reflecting now from the perspective of the bench, I'm a lot more sympathetic. I appreciate that, and I received it a lot more. It's getting less, but I'm not quite there yet. Court reporters used to take me after hearings and say, could you slow it down a bit, just for us? Yes, I've had one tape it to my podium. But I appreciate that. With respect to the retaliatory failure to promote, we believe the court misapplied the Ward case, misapplied the Harmillo case, and failed to make inferences in favor of Dr. Beckman and weigh the pretext evidence as a whole picture. Moving to the Ward v. Jewell case, what the court said in the summary judgment order is a dismissal of plaintiffs' evidence of biased, discriminatory remarks made by the decision maker, Dr. Malatinsky. After Dr. Beckman filed an EEO complaint asserting gender discrimination, Dr. Malatinsky was very angry. He demanded that she not pursue any claims of discrimination. What's important to note, you'll notice in the briefs, that the district court referred to general comments about a nurse nail. A nurse nail was identified in the EEO complaint of discrimination. Excuse me, these are arguments that go to pretext? Yes, would you like me to focus? Let's go back to Ward. Actually, what I wanted to ask you, I think I understand your arguments relative to pretext, but my question goes more to causation. Because on the promotion, the PBI scores for Dr. Legjack's were across the board higher than they were for your client, and Dr. Legjack had more relevant experience. So even though you may have some pretext argument relative to Dr. Malatinsky's alleged animus, would that have been a but-for cause of her failure to be promoted? Wouldn't she not have been promoted on the objective facts that she just didn't rank higher than Dr. Legjack? And that's a good question, and let me explain why that's not the appropriate question. It's a good question, but not an appropriate one. Okay, that's good. Oh, but pertinent rather than appropriate. As the EEOC noted in McKenzie v. Renberg and EEOC v. BCI Coca-Cola Company, the issue and the pertinent question is not whether the defendant would have been justified in relying on a factually correct reason. No one disagrees that it's factually correct he had more experience, and it's factually correct that he scored greater on the PBI scoring. The issue is whether they relied on that, and I believe a jury could rightly question Dr. Malatinsky's credibility and whether he actually relied on that score when, after significant proceedings, including the filing of a federal court lawsuit alleging gender discrimination, Dr. Malatinsky changed and enhanced the reasons for the decision. I think the defendant's case would have been much stronger if Dr. Malatinsky had not added additional reasons, including a reason the comparison of certifications that's factually false. Dr. Malatinsky claimed after a federal lawsuit was filed in his deposition that he didn't just rely on the PBI scores. He added additional reasons, including the experience, which wasn't a reason he claimed to have made the decision prior to filing the lawsuit. So even Jarmillo makes an exception to the general rule that the plaintiff's required to rebut every reason thrown out by the defendant. Can I just ask, though? I mean, you've cited a lot of cases, but the arguments still sound to me like pretext-type arguments, and I asked about causation. Causation is... I mean, I'm beyond... I think we're in the causation element of the prima facie case. And the court found that the plaintiff had made out a prima facie case. The defendant did not appeal that. It's not on issue, but let's assume that it was. I'm making it an issue because we have these scores and we have these... We can't reverse it on alternative ground, but we can affirm it on alternative ground. Why isn't this a valid ground on which to affirm that the evidence wasn't there for a prima facie causation element? Absolutely. Prima facie case, the third element, the causation element, can be not just by itself, but you can look at the pretext to help support a finding of causation. And frankly, ultimately, because the plaintiff isn't required to point affirmatively to discrimination, the but-for causation is ultimately a question for the jury. Now, I recognize that this court has often said that the causation element is... The but-for causation is the third prong of the prima facie case, but I believe that looking at the pretext in this case can assist in determining the third prong of the prima facie, and the pretext is that there was a factually correct reason for the decision that the defendant chose not to rely on, chose to enhance, and a jury can question that if that was the real reason, why did he change it? Why did he throw out a factually incorrect reason? And this court's decisions that are set out in the appendix in the briefing is that if one reason is so suspect that it lends the lack of credibility to the employer, and with all due respect, there's not a reason that's more suspect than one that's factually untrue. Do you want to reserve time? Yes, I'd like to reserve the one minute and nine seconds. I'm going to apologize for doing this, but I do think this question may help the panel going forward. On the last issue relating to the dismissal of the complaint and the question of leave to amend, you seem to have narrowed the argument to the reprimand, discriminatory reprimand. Yes. Is that true as to leave to amend as well, that you're not asking for leave to amend as to all the other claims? It would only be with respect. Yes, Your Honor. Okay, that's helpful. Yes. Thank you. May it please the Court, Scott Mull on behalf of the FLE in this matter, the Secretary of the United States. Mull? It's Mull, like a shopping mall, Your Honor. All right. Thank you. On behalf of the FLE, the Secretary of the United States Department of Veterans Affairs. There are really just three issues on appeal here, although there was a bunch more below, and I'm not going to go through them all. That is the gender pay claim, the retaliatory non-selection claim, and then the alleged retaliatory reprimand claim and the related pleading issue. For each of those claims, I want to go one by one. There is a pattern, however, that should be acknowledged. There are undisputed material facts that not only frame the issue that appellant puts forward, but is effectively dispositive of them. So taking each one an issue in turn, the first issue, which is the gender pay claim, what is undisputed is that pay at the Oklahoma City VA is determined by the medical directors. During this relevant time period, there was five because there was high turnover, and there is zero evidence of animus of any of those five, and they are the decision-makers. Number two, there is no evidence of a cat's paw theory here. During the relevant time period, the only two alleged discriminators, Dr. Malintensky and Dr. Haik, did not participate in the pay panels, which submitted the recommendations up to the medical director, which means all... Would you move the microphone a little closer up? Sure. I apologize, Your Honor. It's all right. So the collective imports of those two facts are that the decisions of the pay that were made were free of discriminatory animus. There is nothing to the contrary. This Court doesn't even need to get to the small counterfactuals. Is discriminatory animus necessary if there is proof of disparate pay and no other explanation other than that it had to be gender-based? Yes, Your Honor. First, well, two things. One, I think that's true. Under Title VII, this is not a disparate impact case. It's disparate treatment, and the touchstone is intentional discrimination. And to the extent there's any question as to the ultimate effects or how this neutral pay system played out, there's also the undisputed fact from Dr. McPherson, labor market economist, submitted as part of the summary judgment motion that there is no statistically significant difference in market pay between males and females in any one year or in the aggregate. That is a devastating fact. All plaintiffs... All appellants are left to do is try and point to particular counterfactuals, but each of those are easily explained. So, for instance, there is an example of Dr. Jenkins. An appellant says, Ah, but Dr. Jenkins was at the VA for four more years than an appellant. Omitting the fact that Dr. Jenkins has 20 more years as a doctor, it is rational that he would be paid more. It makes sense. The only real example that an appellant hones in on and really focuses on is Dr. Liu, which is the argument you heard, and I think it's important to address it. So in his affidavit, it's actually paragraph 49E in his declaration, Dr. Malatensky details the various providers that assumed additional duties, everything from pain management board or the otherwise. In the instance of Dr. Liu, he assumed two additional duties. He did compensation and pension exams after normal work hours, and he also did Agent Orange environmental reviews for those veterans who suffered from that ailment, all of which were outside his normal working hours. So it was different duties. Now the claim appellant makes is that somehow Dr. Malatensky's claim is a sham affidavit because it's not backed up by pay documents. I think that's an important claim to look at because the appellant points to the record at page 712 and 713. Those are performance pay documents, and performance pay, as indicated by Ann Davidson's declaration, the chief of HR, are backward-looking evaluations. So during the course of the last year, i.e. before duties were changed, did you meet those performance evaluations? What appellant doesn't point to is the very first document. That's at 711 in the appellant record. That's the SF50 for 2012, when the raise came because of the additional duties. And it says in the remarks section, quote, change in assignment. That's because there were additional duties. That maps on. The idea that somehow the record is inconsistent is not true. Change in duties is the shorthand for additional duties? Precisely, in the remarks section, explaining why it is. Is there anything in the record that confirms that that's exactly what that means? No, it didn't because... So how are we supposed to rely on that? That seems like it's a pretty general statement. And I think what the appellant's saying is that if he was paid for additional duties, why doesn't that show up more clearly in the pay record? I guess, Your Honor, that's a critique of the record-keeping of the VA, but let's be clear what's not disputed. There is no dispute that Dr. Lew did, in fact, assume additional duties. There's no contrary deposition testimony. There's no declaration or evidence from Dr. Lew or from anyone in management that he did not assume those duties. How come this came up so late in the summary judgment process, though? It seems a little late in the game for Dr. Tinsky to be telling us about this. Your Honor, I don't think this is late in the game. Well, it was an affidavit after deposition. Sure, and after a very extensive deposition. Why wasn't he asked about that? Why wasn't it clarified then? Well, because... There was the VA in showing that additional... that he was paid for additional duties instead of coming in at the end with an affidavit. Well, Your Honor, because the deposition is a deposition taken by plaintiff. I was there. I was the one defending it, and she had every opportunity to ask all the questions she wanted. Dr. Malatinsky's deposition testimony is consistent. There are only two instances when pay was raised during the course of the pay freeze. One is the conversion of retention pay, and the other was increased duties. Well, all I'm saying, counsel, is that on the cold record, going through the cold record, the question on pretexts, whether one can draw an inference of pretext, and there really isn't much there in terms of the records. I mean, you don't seem to like the question, but I'd like to get a clearer answer from you. Absolutely. So, first of all, putting aside the fact that the two facts that are still undisputed, namely the medical director's decision, and there's no cat's paw here, and this is only one example out of eight... No, I understand that, but the claim was dismissed by the district court on pretext, and that's what we ought to be zeroing in on, correct? Absolutely. With you 100%, Your Honor. All right. And as to this claim, there is no factual dispute that he assumed additional duties. The only claim appellant's putting forward is somehow that that should be in question because it's not adequately documented in a pay document. There's no requirement that they have greater remarks in the remarks section of a standard form 50. These are shorthand for HR, and this is not an issue brought forward, by the way, until in response to summary judgment. So this has been the consistent theme of the VA throughout. These are the basis for which pay increases are, and the pay increases aren't hidden. We provided a summary table that lists every one. And I remind you, by the way, that prior to 2012, Dr. Liu made less market pay than Dr. Beckham. Made less. So it's not some sort of consistent gender discrimination. Taken in whole, out of 80-some-odd doctors with no statistically significant deviation which would show gender discrimination and a record which does have a grounding for a difference in pay and a declaration that he did assume new duties that is uncontested, that is woefully insufficient to demonstrate pretext. Again, given the broader issues as well. If I could, unless there's other questions on that one, turning to the issue of the non-selection. Again, two facts here that are uncontested and are controlling. Number one, Dr. Lake Jack scored higher in the PBI reviews, the performance-based interviews, both in the aggregate and every single individual. And secondly, which is conceded, he was acting in the lead role or lead physician role at the North May Clinic, which was the position at issue, the medical directorship. And so he had valuable experience that Dr. Beckham lacked. Those are uncontested. And although appellant's contention is somehow that the secretary has added and subtracted factors, something I will address in a second because it's not accurate, the one thing that's important, though, is that what stays consistent throughout is the PBI. There's no allegation that we ever didn't claim the PBI as the basis. And, in fact, Dr. Lake Jack scored higher. So the adding of, subtracting, even if one were to assume that to be the case, which it is not, it is still the justification and basis for why Dr. Lake Jack would be selected, especially with the experience. Now, as to the claim of expanding and contracting the factors, the record simply doesn't bear that out. In our brief at pages 43 through 45, the secretary block quotes the portions that are cited in appellant's brief to look through those. Appellant ignores testimony seven lines down that explains that it was not board certifications and explained the answer above, where it said, why did you select Dr. Lake Jack? In very normal nomenclature of a non-English native speaker, by the way, Dr. Malatensky explains, well, he's a good doctor. He has experience. He has board certifications. He has longer experience as a doctor. True. He got better reviews. True. And he had more relevant experience. True. Appellant seeks on those first two instances of normal discourse explaining that, well, he has certification. He's experienced. But those are not comparative factors. And that is the sole grounding for the idea that somehow he's adding and subtracting. Later in that same transcript, he was asked directly, well, are board certifications one of the meaningful differentiators? And Dr. Malatensky says no. That's at the infancy of this case when it was just in the investigation phase and the administrative phase. This is not some litigation position being put forward by Dr. Malatensky. Now, the closest that appellant gets to in this argument on the non-selection is focusing on the comments. So these are the two comments that Dr. Malatensky allegedly made. He denies them for purposes here. We'll take them at face value. One thing on the outside is important. Appellant contends and conceives that there is no temporal proximity for these comments. They are well outside the three months. And the way of explaining this in the appellant brief is this is but one piece, small piece of the larger puzzle. The only problem is there is no other pieces to this puzzle, especially given the concessions of the difference in qualifications. What's also important in each of these comments is that it is not a reference to the EEO. It's the ongoing dysfunctional relationship at the North May Clinic. The last time Dr. Beckham was there, it did not go well. She had to be removed because she had a very dysfunctional relationship with a nurse there. So it's not at all surprising that Dr. Malatensky, as the manager of the ambulatory care division, has some concerns that she would seek to go manage the very same unit for which she was unable to get along with. And to be clear, a plaintiff was asked, bluntly, this idea that was related to the EEO, is that your inference or did he say that? And she says, well, that's my inference of what he meant. And that's consistent throughout. If you look at the declaration the plaintiff herself submitted in support of summary judgment, it makes no reference to the EEO, the cited quotation. In her complaint, where she specifically pleads this commentary, there's not a single reference to the EEO. And in her deposition, she again reaffirms that. So there are no other pieces to the puzzle. The district court was correct, Judge Heaton, in finding that this is the application of the Jewel v. Ward case. It requires speculation on what was inferred as to what Malatensky meant outside of the temporal proximity time period in the first instance. Counsel, you're on the home stretch. Can I ask a question about the other retaliation? Sure. This is the retaliatory reprimand claim. Yes. Why doesn't the reference in the reprimand to Dr. Beckham's unequal pay allegations create a genuine issue as to pretext? Sure. First of all, if I had my druthers, I wish that sentence wasn't in there. But I think the district court got it correct in terms of the structure as to why it was in. So the reprimand consists of three different specifications. And again, if I could back up for one moment, the first two specifications, appellant makes no attempt to defend. And indeed, the bribery allegation in the third specification, as Judge Heaton found there, indisputably inappropriate comments. The third specification is the only dispute. And in that one, appellant contends that because there's additional sentence saying there's this e-mail you sent, it's where you complain about pay, and in there you say maybe some money changed hands. It's accusing her supervisor of a bribe. And by the way, there's zero evidence to back that up. In each specification, the structure is clear. There's a prefatory introduction that spells out what is the e-mail that's the subject of the review, and then the offending language is set off in quotes. That pattern repeats itself in all three specifications. And in that third specification, the portion that is the offending language is the allegation of a bribe by a subordinate to her superior officer, sent, by the way, not just to Dr. Malatensky, but forwarded to the entire Inventory Care Division. Your argument is that the reference in specification 3 is a way of just referring back to her e-mail of August 27th. Because there were two on that day, Your Honor. I understand. But the e-mail itself said, my EEO complaint that I have been discriminated against with respect to pay. Now, I understand your reading of specification 3, but why couldn't a reasonable jury also read it as actually having problems with the fact that she raised this unequal pay claim? Well, first of all, two reasons. The first two specifications independently warrant it. I understand that. But as to the third, the exact quote as to the bribe was not related to a pay discrimination. I'm not talking about the quote to the bribe. I'm talking about the reference in specification 3 to her unequal pay complaint. And I take it you're conceding that the unequal pay complaint is protected activity. Absolutely. But what I don't concede, Your Honor, is that somehow engaging in a protected communication immunizes you from making comments that are indisputably inappropriate in the words of Judge Heaton. And I think in a very common sense level, is true. I see my time has ended. Your Honor, we would ask that the court affirm the orders of summary judgment, as well as the order of dismissing the retaliatory reprimand claim. Thank you. Thank you, counsel. We extended 30 additional seconds to her. So we'll make it a minute. Thank you. Just a second, counsel. One second. Thank you. Focusing on the retaliatory reprimand claim, if you look at the court's order, where the court said, sparsing out, it was just citing to the particular email as sort of a map to go by, as the counsel has just said. You look at the court's order. He cites to the defendant's response brief. The response brief doesn't cite to any evidence. It's defendant's counsel's argument that, clearly, this is just a map to show which part of the particular email she's referring to. Dr. Malatinsky and Dr. Haik both testified that a reasonable reading of this is that that was the email they were referring to, the entire email, which contains both protected and unprotected complaints. But that wasn't their intent. Well, the jury is allowed to decide their intent. When you have a piece of evidence, such as that email, that can be read either way, then the jury is allowed to make that decision. And the defendant's denial of retaliatory intent isn't sufficient to base summary judgment decision on. Thank you, counsel. Thank you. The case is submitted. Counsel are excused.